IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CLIFTON PETTUS, | ) |
| | ) |
| Petitioner, | ) |
| | )   CIVIL ACTION NO. |
| v. | )   2:17-CV-260-WKW |
| | )           [WO] |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is Clifton Pettus's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. CIV Doc. # 1.[1] For the reasons that follow, the court concludes that Pettus's § 2255 motion should be denied without an evidentiary hearing and be dismissed with prejudice. Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*.

## **I. INTRODUCTION**

In February 2013, a jury found Pettus guilty of conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) (Count 1), and two counts of using a communication facility (a cell phone) to facilitate the conspiracy, in violation of 21 U.S.C.

---

[1] References to document numbers assigned by the Clerk of Court in the instant civil action, Civil Action No. 2:16-CV-260-WKW, are designated as "CIV Doc. #." References to document numbers assigned by the Clerk of Court in the underlying criminal case, Case No. 2:12-CR-87-WKW, are designated as "CR Doc. #." Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

§ 843(b) (Counts 24 and 25).[2]  After a sentencing hearing on June 4, 2013, the district court sentenced Pettus to 188 months in prison on the conspiracy count and to one year in prison on each communication-facility count, all terms to run concurrently.

Pettus appealed, arguing that (1) the district court erred in granting the Government's "reverse *Batson*"[3] challenge as to Juror 29," and (2) the district court erred in the amount of cocaine it attributed to him for the purpose of calculating his base offense level.  *See* CIV Doc. # 8-5.

On June 1, 2015, the Eleventh Circuit issued an opinion affirming Pettus's convictions and sentence.  *See United States v. Pettus*, 611 F. App'x 961 (11th Cir. 2015); CIV Doc. # 8-7.  Pettus filed a petition for writ of certiorari in the United States Supreme Court, which that court denied on May 2, 2016.  CIV Doc. # 8-9.

On April 3, 2017, Pettus, acting *pro se*, filed this § 2255 motion asserting the following claims:

1. His counsel rendered ineffective assistance by failing to (a) "subject the Government's star witnesses to vigorous cross-examination," (b) object to leading questions posed by the prosecution, (c) raise "an important and obvious" defense, (d) request a drug-quantity entrapment instruction, and (e) discuss any plea offers.

2. The district court erred in reseating Juror 29 after granting the Government's reverse *Batson* challenge.

---

[2] Pettus was indicted along with eleven other defendants, all of whom were charged with participating in the drug-distribution conspiracy.  Pettus was tried together with five of his codefendants.  Several participants in the conspiracy were cooperating witnesses for the Government at trial.

[3] *Batson v. Kentucky*, 476 U.S. 79 (1986).

      3.     The district court erred in attributing 15 kilograms of cocaine to him for the purpose of calculating his base offense level.

      4.     The district court erred in admitting cell phone evidence implicating him.

CIV Doc. # 1 at 4–8; CIV Doc. # 2 at 3–13.

## II. DISCUSSION

### A. General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited. A prisoner may have relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

### B. Claims of Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 689. Second, the petitioner must show that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable.  *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted).  The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance."  *Id*.  (internal quotation marks and brackets omitted).  "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one."  *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.  The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Id*. at 372.

4

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 1. *Cross-Examination of Government's "Star Witnesses"*

Pettus claims his trial counsel, Thomas M. Goggans, rendered ineffective assistance by failing to subject the Government's star witnesses to vigorous cross-examination. CIV Doc. # 1 at 4; CIV Doc. # 2 at 4.

In an affidavit addressing Pettus's allegations of ineffective assistance of counsel, Goggans states that his trial strategy was to keep Pettus "outside of the business operations of the main actors in the drug conspiracy charged." CIV Doc. # 4 at 2. To that end, Goggans states it was his intent during trial "to try to keep Mr. Pettus 'out of sight' to the extent possible." *Id*. The trial record reflects that Goggans cross-examined two of the Government's witnesses, Lisa Jackson and Willie Walker. CR Doc. # 748 at 74–84, 109–20. On direct examination, Jackson testified that she had delivered cocaine for Delmond Bledson (a kingpin in the conspiracy)[4] to Pettus twice near the end of 2011 or a little afterward. *Id*. at 51–55. Jackson also testified that on an occasion when she delivered cocaine to Willie Walker for Bledson, she saw Pettus in Walker's vehicle. *Id*. at 55–57.

---

[4] Bledson was a cooperating witness for the Government at trial and gave testimony against several participants in the drug conspiracy, including Pettus. However, Bledson described Pettus as "a guy that I know" (CR Doc. # 750 at 11) and also stated Pettus was "not a regular person that I deal with" (CR Doc. # 751 at 38). Although Goggans did not cross-examine Bledson, a decision not to do so would arguably be consistent with a trial strategy of trying to keep Pettus "outside of the business operations of the main actors in the drug conspiracy."

Walker testified on direct examination that he would sometimes sell the cocaine he bought from Bledson to Pettus. *Id*. at 105–08.

Other than referring to "the Government's star witnesses," Pettus does not identify which witnesses Goggans should have cross-examined more vigorously. Nor does he specify a line of questions that, if pursued, would have changed the outcome of the proceedings. He presents nothing to suggest what further cross-examination of Government witnesses would have yielded beneficial to his defense.

Where a court can only speculate on whether the outcome of a proceedings would have been different had defense counsel conducted further cross-examination of a witness, there is an insufficient showing of prejudice under *Strickland*. *See Poindexter v. Mitchell*, 454 F.3d 564, 572–73 (6th Cir. 2006). Pettus proves neither deficient performance by Goggans nor prejudice. He is entitled to no relief on this claim.

### *2. Leading Questions by Prosecution*

Pettus next claims that Goggans was ineffective for failing to object to leading questions posed by the prosecution. CIV Doc. # 1 at 4; CIV Doc. # 2 at 4. As Goggans observes in his affidavit filed with this court, Pettus does not identify the purportedly leading or improper questions to which he thinks Goggans should have objected. CIV Doc. # 4 at 4. Goggans further states:

> [I]t could be that there were some questions which might have possibly been subject to some objection on leading or other grounds, but which did not particularly relate to Mr. Pettus or present any undue harm to Mr. Pettus to which I did not object because we were trying to keep Mr. Pettus "out of sight."

CIV Doc. # 4 at 4.

6

This court's consideration of the trial transcript reveals no leading or improper questions posed to testifying witnesses by the prosecution to which an objection on Pettus's behalf by Goggans would have benefited Pettus's defense. And as indicated by Goggans in his affidavit, Pettus identifies no such questions in his § 2255 motion. Pettus's conclusory allegation establishes neither deficient performance by Goggans nor prejudice. Therefore, he is entitled to no relief on this claim of ineffective assistance of counsel.

### 3. Failure to Raise "Important and Obvious" Defense

Pettus claims Goggans rendered ineffective assistance of counsel by failing to raise "an important and obvious" defense. CIV Doc. # 1 at 4; CIV Doc. # 2 at 5.

Once again, Pettus fails to provide specific facts supporting a claim. As Goggans states in his affidavit: "[Pettus] does not say what that 'important' and 'obvious' defense was. So, I do not know how to respond to that complaint." CIV. Doc. # 4 at 4. This court, too, is left only to speculate on the important and "obvious" defense Goggans should have raised.

As noted above, Goggans's trial strategy was to keep Pettus separated from the operations of the main actors in the drug conspiracy by trying to keep Pettus "out of sight" in the testimony presented by witnesses at trial. CIV Doc. # 4 at 2. Strategic choices of counsel made after investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Strickland*, 466 U.S. at 690–91. Even if in retrospect the strategy to pursue one line of defense over another appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent lawyer would have chosen it. *Adams v. Wainwright*, 709 F.2d 1443, 1145 (11th Cir. 1983); *see*

7

*also United States v. DiTommaso*, 817 F.2d 201, 215 (2d Cir. 1987) (reviewing courts are "not [to] second-guess trial counsel's defense strategy simply because the chosen strategy has failed"). Accordingly, tactical or strategic choices by counsel generally cannot support a collateral claim of ineffective assistance. *United States v. Costa*, 691 F.2d 1358, 1364 (11th Cir. 1982); *Coco v. United States*, 569 F.2d 367, 371 (5th Cir. 1978).

Given the nature of the evidence, the trial strategy chosen by Goggans was professionally reasonable. Moreover, given that Pettus does not even identify the "important and obvious defense" Goggans should have raised, Pettus wholly fails to show a reasonable likelihood that Goggans would have succeeded by pursuing a different line of defense. Pettus proves neither deficient performance by Goggans nor prejudice. He is entitled to no relief on this claim.

### 4.  *Failure to Request Drug-Quantity Entrapment Instruction*

Pettus claims Goggans was ineffective for failing to request a drug-quantity entrapment instruction.[5]  CIV Doc. # 1 at 7; CIV Doc. # 2 at 9–10.

Addressing this claim, Goggans states:

> Mr. Pettus complains that I failed to request a "Quantity Drug Entrapment Instruction." Mr. Pettus does not identify the basis for such an instruction. So, responding to that complaint is difficult. My recollection is that I requested charges supported by the evidence and which I thought were appropriate.

CIV. Doc. # 4 at 4.

---

[5] In different places in his pleadings, Pettus refers to a "Quantity Entrapment Instruction" (CIV Doc. # 1 at 7) and a "Quantity Drug Entrapment Instruction" (CIV Doc. # 2 at 9).

8

Because Pettus's claim is vague and conclusory, this court cannot ascertain the nature of, or the basis for, the instruction Pettus says Goggans should have requested. If it is Pettus's contention that Goggans should have sought an entrapment instruction premised on an argument that the Government engaged in conduct intended to manipulate Pettus to make drug buys or sales in amounts necessary to trigger a statutory minimum, *see United States v. Combs*, 827 F.3d 790, 796–97 (8th Cir. 2016), or to cause an enhancement of his offense level, *see United States v. Docampo*, 573 F.3d 1091, 1097–98 (11th Cir. 2009), the record reflects that none of the drug amounts attributed to Pettus involved government-initiated conduct, such as controlled buys or sales or using confidential informants to arrange drug deals with Pettus. "[S]entencing factor manipulation occurs when the government's manipulation of a sting operation, even if insufficient to support a due process claim, requires that the manipulation be filtered out of the sentencing calculus. *United States v. Ciszkowski*, 492 F.3d 1264, 1270 (11th Cir. 2007). Sentencing factor manipulation focuses on the Government's conduct. *See Docampo*, 573 F.3d at 1097. For there to be sentencing factor manipulation, "the government must engage in extraordinary misconduct." *United States v. Haile*, 685 F.3d 1211, 1223 (11th Cir. 2012). Pettus demonstrates no basis for Goggans to request a jury instruction—or to argue to the court at sentencing—that the Government engaged in sentencing factor manipulation or in "drug-quantity entrapment."

To the extent Pettus presents any argument regarding this claim, his argument appears to be that the district court erred in the amount of cocaine it attributed to him for the purpose of calculating his base offense level. *See* CIV Doc. # 2 at 9–10. However,

9

Goggans made this argument to the district court at sentencing and to the Eleventh Circuit in Pettus's appeal. Both courts rejected the argument. *See* CIV Doc. # 9-2 at 18–19; CIV Doc. # 8-3 at 4–7, 20–25; CIV Doc. # 8-5; CIV Doc. # 8-7; *see also United States v. Pettus*, 611 F. App'x 961 (11th Cir. 2015).

Because Pettus proves neither deficient performance by Goggans for failing to request a drug-quantity entrapment instruction nor any prejudice resulting from Goggans's performance, he is entitled to no relief on this allegation of ineffective assistance of counsel.

### *5. Failure to Discuss Plea Offers*

Pettus claims Goggans rendered ineffective assistance of counsel by failing to discuss any plea offers made by the Government. CIV Doc. # 1 at 4; CIV Doc. # 2 at 13.

Addressing this claim in his affidavit, Goggans states:

> Mr. Pettus complains that I did not advise him to accept a plea offer from the government and that he never saw a plea offer from the government. Any plea offer made by any prosecutor is always conveyed by me to my clients. I did talk with Mr. Pettus about the possibilities of working out a plea agreement. However, in all my discussions with Mr. Pettus, he never expressed any interest in doing anything to work out a plea agreement. To the contrary, he expressed his intent to take his case to trial and accept whatever was in store at the end of that road.

CIV Doc. # 4 at 5.

In the Government's response to Pettus's claim, U.S. Attorney Verne H. Spiers states:

> [T]he United States never offered Pettus a plea deal because Pettus made clear that he wanted a trial. Thus, Goggans could not have advised Pettus to accept a plea offer. As the lead counsel at trial, the undersigned prosecutor

10

> has intimate knowledge of all plea offers in this case. Simply stated, no plea offers were extended to Pettus.

CIV Doc. # 8 at 12–13.

In *Missouri v. Frye*, 566 U.S. 133 (2012), the Supreme Court explained that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id*. at 145. Counsel must also "assist the defendant actually and substantially in deciding whether to enter the plea." *Owens v. Wainwright*, 698 F.2d 1111, 1113 (11th Cir. 1983). To meaningfully advise the defendant in the plea context, counsel "must be sufficiently familiar with the facts and law" of the defendant's case. *Owens*, 698 F.2d at 1114. Beyond that, the Supreme Court has noted that "the duty and responsibilities of defense counsel in the plea bargain process" are difficult to define, as such negotiations are an art "at least as nuanced as trial advocacy." *Frye,* 566 U.S. at 144.

There is no constitutional right to plea bargain. *See Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). A petitioner fails to establish he was prejudiced by counsel's failure to negotiate a favorable plea agreement "with nothing more than the bald assertion that such an agreement might have been possible." *Cummings v. United States*, 2013 WL 2422889, at *8 (S.D. Ga. 2013). Here, Pettus had no right to be offered a plea deal, and he indicated to Goggans that he did not want to plead guilty but instead wanted to go to trial. Goggans did not communicate to Pettus any plea offers made by the Government because, under the circumstances, the Government never offered Pettus a plea deal.

11

Pettus's claim regarding Goggans's failure to discuss a plea offer by the Government fails because Pettus has not demonstrated that a plea offer was made. Indeed, there is no evidence that a plea offer was made. Consequently, Pettus establishes neither deficient performance by Goggans nor prejudice, and he is entitled to no relief on this claim of ineffective assistance of counsel.

**C. Procedurally Barred Claims**

*1. Claims Litigated on Direct Appeal*

Pettus's § 2255 motion includes claims that the district court erred by (1) reseating Juror 29 after granting the Government's reverse *Batson* challenge and (2) attributing 15 kilograms of cocaine to him for the purpose of calculating his base offense level. *See* CIV Doc. # 1 at 5–7; CIV Doc. # 2 at 5–11. Pettus raised both of these claims on direct appeal, where they were addressed and rejected by the Eleventh Circuit. CIV Doc. # 8-5; *see United States v. Pettus*, 611 F. App'x 961 (11th Cir. 2015) (CIV Doc. # 8-7).

"The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *see also United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981). If a claim has previously been raised on direct appeal and decided adversely to a defendant, it cannot be relitigated in a collateral attack under § 2255. *See Nyhuis*, 211 F.3d at 1343. Pettus cannot relitigate these claims, which have already been decided against him by the Eleventh Circuit in his direct appeal. The claims are procedurally barred from further review.

*2. Claim Raised for First Time in § 2255 Motion*

In his § 2255 motion, Pettus claims that the district court erred in admitting cell phone evidence implicating him. CIV Doc. # 1 at 8; CIV Doc. # 2 at 11–12. This claim is procedurally defaulted because Pettus did not raise this issue on direct appeal.

Ordinarily, where a substantive claim is not advanced on direct appeal, it is deemed procedurally barred in a § 2255 proceeding. *See McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011); *Reece v. United States*, 119 F.3d 1462, 1467 n.9 (11th Cir. 1997); *Mills v. United States*, 36 F.3d 1052, 1055–56 (11th Cir. 1994). A petitioner can avoid this procedural bar by showing both cause for failing to raise the claim on direct appeal and actual prejudice arising from that failure. *See United States v. Frady*, 456 U.S. 152, 167–68 (1982); *Mills*, 36 F.3d at 1055. To satisfy the "cause" exception to a procedural default, a petitioner "must show that some objective factor external to the defense prevented [petitioner] or his counsel from raising his claim on direct appeal and that this factor cannot be fairly attributable to [petitioner's] own conduct." *Lynn*, 365 F.3d at 1235. To establish that the cause of the procedural bar actually caused prejudice, a petitioner must show, "not merely that the error[ ] [claimed] created a possibility of prejudice, but that [it] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170.

Although afforded an opportunity to do so (*see* CIV Doc. # 10), Pettus has asserted no grounds as cause for his failure to raise his cell-phone-evidence claim on direct appeal

(s*ee* CIV Doc. # 12).[6]  Consequently, the claim he raises for the first time in his § 2255 motion is barred from review in this proceeding.[7]

### III. CONCLUSION

For the reasons set out above, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Pettus be DENIED and this case DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before March 23, 2020.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations under 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1.  *See Stein v. Lanning*

---

[6] One of Pettus's codefendants, Willie Jerome Davis, did raise a claim on direct appeal challenging admission of the cell phone evidence obtained by wiretaps.  The Eleventh Circuit held that there was no error in the admission of this evidence.  *See* CIV Doc. # 8-7 at 10–12.  In his pleadings with this court, Pettus fails to demonstrate that this evidence was erroneously admitted.

[7] A colorable claim of actual innocence may also overcome a procedural bar and allow for collateral review of a defaulted claim.  *See Frady*, 456 U.S. 152 at 167–68.  Pettus makes no claim that he is actually innocent of the offenses of which he was convicted.

*Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982*). See also Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981) (en banc).

    DONE this 9th day of March, 2020.

                                  /s/   Charles S. Coody
                                  CHARLES S. COODY
                                  UNITED STATES MAGISTRATE JUDGE